## R. M. Bourne & Company v. Peoples Union Bank and Trust Company, Appellant.

Argued May 22, 1961. Before JONES, C. J., BELL, JONES, COHEN, BOK and EAGEN, JJ.

*Edmund K. Trent,* with him *Ralph H. Demmler,* and *Reed, Smith, Shaw & McClay,* for appellant.

*Earl F. Reed,* with him *James B. Hecht,* and *Thorp, Reed & Armstrong,* for appellees.

OPINION BY MR. JUSTICE COHEN, July 17, 1961:

This action in assumpsit was brought by R. M. Bourne & Company (Bourne), nominee of The Cleveland Trust Company, and The Cleveland Trust Company (Cleveland Trust) against Peoples Union Bank & Trust Company (Peoples Union) of McKeesport, Pennsylvania. The plaintiffs sought to recover the sum of $201,075.14, with interest. The lower court, sitting without a jury, awarded plaintiffs the damages prayed for. Peoples Union has appealed from the judgment entered after dismissal of its exceptions.

The facts as set forth in the opinion of the trial court are as follows:

For some years prior to December, 1957, Eastern Investment and Development Corporation (Eastern), now bankrupt, was a depositor in Peoples Union. Although the balance of Eastern had been substantial during much of this time, it had dwindled to approximately $2,000 by December of 1957. During the month of December, 1957, Earl Belle, an executive Vice-President of Eastern, approached C. E. Palmer, President of Peoples Union and informed him he had a "friend" who would be willing to make a deposit of $400,000 in the bank in return for a six months' certificate of deposit in that amount at 2 1/2% interest if such arrangement was acceptable to the defendant bank. Palmer agreed to accept the deposit, and Belle then promised to fur-

nish him with the name of the person to whom the certificate should be made payable.

Thereafter, Belle, acting on behalf of Eastern, which he apparently controlled, consulted with a note and money brokerage firm in New York, by the name of Garvin, Bantel & Company (Garvin), and made known to this firm his desire to have money placed on deposit in the defendant bank in the sum of $400,000. Belle informed the representative of Garvin, whom he had consulted about this deposit, that he wanted the transaction arranged at the lowest possible rate of interest.

Garvin then contacted Cleveland Trust, one of the plaintiffs, in connection with Belle's proposition and furnished Cleveland Trust with the name of Peoples Union as the bank which would issue the certificate of deposit. After checking the financial condition of Peoples Union in the bankers' "blue book", Cleveland Trust agreed to make the deposit for 5% interest, payable in advance. Garvin then notified Belle that the deposit could be arranged for 5 1/4% interest, payable in advance. Belle notified Palmer, President of Peoples Union, and directed that the certificate be made payable to Bourne.

In addition to the certificate of deposit, which Cleveland Trust required from Peoples Union, Cleveland Trust also insisted that Eastern give it a note covering the amount on deposit as additional security to cover the possibility or contingency of Peoples Union's failure. A note, payable to Cleveland Trust, was then executed in the sum of $400,000 by Belle as an officer of Eastern. At the same time Eastern forwarded the interest in advance, in compliance with the conditions imposed by Cleveland Trust. Peoples Union, at the direction of Belle, then forwarded the certificates of deposit in the amount of $400,000 to the Chase Manhattan Bank of New York, the New York correspondent for both Cleveland Trust and Peoples Union.

On December 11, 1957, after receiving the certificate of deposit and under express instructions from Cleveland Trust, the Chase Manhattan Bank charged Cleveland Trust's account in the sum of $400,000 and credited Peoples Union in a like amount. Chase Manhattan Bank then mailed the certificate of deposit to Bourne in care of Cleveland Trust.

As later events seemed to prove, Belle, in arranging for this deposit in Peoples Union by Cleveland Trust, was trying to build up good will with Peoples Union, so as to be able to influence the Board of Directors of Peoples Union for possible future loans to Eastern.

In February, 1958, Belle, on behalf of Eastern, negotiated a loan with Peoples Union in the amount of $200,000. The only precaution taken by Peoples Union to secure this loan was to receive the personal guarantee of the three officers of Eastern, namely, Belle, Burton Talenfeld and Murray Talenfeld. While Belle was negotiating this loan, he casually mentioned to Palmer that he would try to get him another deposit of $200,-000. This, the trial judge found, was an apparent inducement on the part of Belle to get the bank to loan Eastern the $200,000. At the same time that Belle was negotiating the loan with Peoples Union, he was negotiating a similar loan with the Security National Bank of Huntington, New York. Belle likewise informed this bank that he had a friend who would deposit $200,-000 with it. In fact, Belle did arrange, through Garvin, to get Cleveland Trust to deposit another $200,000 in Peoples Union and a like amount in Security National Bank of Huntington, New York. To do so he had to execute a judgment note of Eastern, payable to Cleveland Trust, in the sum of $400,000. This note was apparently issued to protect Cleveland Trust in case either or both of the banks failed and would be unable to repay the amount of deposit. Peoples Union issued its certificate of deposit on February 28, 1958, payable to

Bourne for $200,000; and Cleveland Trust authorized Chase Manhattan Bank to credit Peoples Union with an additional $200,000.

On April 7, 1958, Belle bought all the outstanding stock of Eastern, including the stock held by the two Talenfelds previously mentioned. He notified Peoples Union of this fact and stated that the Talenfeld brothers desired to be released from their personal guarantees of Eastern's $200,000 indebtedness to Peoples Union. Although Eastern had not made any principal payments on this loan up to that time, Peoples Union, by Board action on April 28, 1958, agreed to release the Talenfelds from their guarantees. On May 14, 1958, Peoples Union accepted, in place of the old note of Eastern, which was dated February 28, 1958, a new note dated May 14, 1958, and at the same time surrendered the previous letter of guarantee signed by the three officers of Eastern and their wives, accepting in its place the new letter of guarantee signed only by Belle and his wife.

In the stipulation filed in this case by Peoples Union, they state that in releasing the Talenfelds they did not rely upon the existence of this deposit or the acceptance of any time certificate of deposit which was outstanding and in the name of Bourne.

On June 11, 1958, Peoples Union paid off the first certificate of deposit by issuing a third certificate of deposit in the sum of $400,000, payable to Bourne. On or about July 4, 1958, Belle removed or substantially destroyed all the records of Eastern and with his wife absconded by flying to Rio de Janiero, Brazil. When Peoples Union, who had not received any principal payments on its loan of $200,000 to Eastern, learned that Belle had absconded and realized that Eastern had practically no assets, it credited against this principal sum of $200,000 the amount of $563.74, which remained on deposit in Eastern's account with Peoples Union

at that time, leaving a balance of $199,436.26. Peoples Union then caused a judgment by confession to be entered against Eastern for this amount. Peoples Union was then holding a large claim against a bankrupt corporation which had no assets.

On July 16, 1958, after the financial condition of Eastern was made known to the public and Belle's chicanery revealed, Cleveland Trust sent a telegram to Peoples Union to the effect that it held for payment the two certificates of deposit then outstanding, and asked for a confirmation. On July 17, 1958, Peoples Union replied by way of a telegram confirming the fact that the certificates were outstanding.

Later, Peoples Union conducted an investigation into the facts and circumstances surrounding the three transactions between Eastern, Cleveland Trust and Garvin which resulted in the purchase of the certificate of deposit. Upon then learning for the first time that these transactions were recorded by both Cleveland Trust and Garvin as loans to Eastern which recited the certificates as collateral, Peoples Union took the position that the funds with which the certificates were purchased actually belonged to Eastern and decided to withhold the amount of their judgment against Eastern as a set off against the funds represented by the second certificate of deposit.

The trial judge found that there were certain circumstances surrounding the purchase of the certificate of deposit whereby, as between Eastern and Cleveland Trust, the transaction would appear to have been a loan with the certificate in question pledged as collateral. Nevertheless, he ruled that the transaction as a whole was primarily a deposit by Cleveland Trust of its own money and for its own account. He found that Eastern (not Belle, acting for Eastern) never had its hands on either the money or the certificate and that Eastern never had any beneficial interest in either the funds

represented by the certificate or in the certificate it-self. He concluded that the defendant, Peoples Union, had no right to assert any set off against the funds or the certificate based on the debt it held against Eastern.

We are of the opinion that the judgment of the court below must be affirmed whether we adopt the finding that the transaction was a deposit by Cleveland Trust of its own money for its own account or whether we overrule that determination and view the transaction as a deposit by Eastern of money that it had borrowed from Cleveland Trust.

If the transaction is treated as a deposit by Cleveland Trust of its own money for its own account, then Peoples Union obviously is not entitled to set off Eastern's debt and must pay Cleveland Trust or its nominee Bourne the face amount of the certificate in addition to interest.

But even if we adopt the theory that Cleveland Trust loaned $200,000 to Eastern and Eastern purchased the certificate of deposit with the borrowed funds, two barriers would still stand in the way of Peoples Union's right to a set off. The first is the rule of law set forth in *First National Bank v. Mason*, 95 Pa. 113 (1880), which in its simplest terms, stands for the general proposition that when "A" deposits, in his own name, "B's" money in "C" bank, "C" bank may not deny "A's" title to the funds and cannot set off a debt owed the bank by "B" when "A" demands the funds. The *Mason* case was concerned with funds in a checking account, but the principle of law has been applied to other situations. While we have now been asked to extend the *Mason* doctrine to the case before us involving a non-negotiable certificate of deposit, we need not determine that issue since we have decided to base our ruling on another ground—the inability of a bank to set off a debt against a special deposit.

"It is a general rule that funds deposited in a bank for a special purpose, known to the bank, or under a special agreement, cannot be set off by the bank against a debt due to it from the depositor." 5A Michie, Banks & Banking, Ch. 9, §129 (perm. ed. 1950).

If Peoples Union now desires to view this transaction as a deposit of Eastern's money, it must also recognize that the deposit was made by Eastern to obtain a certificate of deposit which was to be used as collateral for a loan obtained from a third party. As such this was clearly a deposit for a special purpose.

In *Snyder v. Southwestern National Bank*, 294 Pa. 1, 143 Atl. 206 (1928), this court denied a bank the right to set off a debt owed it by a depositor against a certificate of deposit which had been obtained from the bank by the depositor and assigned, as collateral, to the state treasurer. We found there that a statement on the certificate that it was to be held by the state treasurer and other factors constituted notice to the bank that the depositor intended to assign the certificate. In the case at bar Peoples Union had comparable notice since the certificate was made out to a third party; and, under its own theory of the transaction, Peoples Union must have realized that the certificate was to be used as collateral for a loan. At any rate Peoples Union can not now maintain that they did not know that the certificate was to be used for a special purpose since that bank placed title to the certificate in the name of one other than its depositor.

Since the deposit has all the indicia of a special deposit and since Peoples Union has stipulated that it did not rely on the presence of this deposit when it made the loan to Eastern, we have no reluctance in applying the rule that a bank cannot apply a special deposit as a set off to a debt owed it by the same depositor.

Judgment affirmed.