**Helen E. SWEASEY, et al., Plaintiffs,**

v.

**A.G. EDWARDS & SON, INC., et al., Defendants.**

**No. 89–4558–CV–C–5.**

United States District Court,
W.D. Missouri, C.D.

May 29, 1990.

Donald F. Bayer, Hoskins, King, McGannon & Hahn, Kansas City, Mo., for plaintiffs.

Michael W. Rhodes, Lathrop, Norquist & Miller, Kansas City, Mo., for A.G. Edwards.

W. Perry Brandt, Stinson, Mag & Fizzell, Kansas City, Mo., for B.C. Christopher, Robyn and Timothy O'Leary.

Reggie C. Giffin, Christopher D. Schneider, Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, Mo., for Shearson Lehman Hutton.

ORDER

SCOTT O. WRIGHT, Chief Judge.

Before this Court is the motion of one of five defendants, a brokerage firm, for summary judgment as to one of six plaintiffs, all of whom were stock market investors. The action is one arising out of the alleged violations of federal and state securities laws, and violation of state common laws committed by a former employee of the movant brokerage firm. In accordance with the following reasoning, the motion is granted.

I.  FACTUAL BACKGROUND

Plaintiff Anabelle L. Martin, along with six other plaintiffs, commenced this action on December 29, 1989, naming as defendants Shearson Lehman Hutton, Inc. ("Shearson"), A.G. Edwards and Sons, Inc. ("A.G. Edwards"), B.C. Christopher Securities Co. ("B.C. Christopher"), Robyn

O'Leary (formerly Robyn Ruppert), and Timothy O'Leary. The other five plaintiffs in this action have submitted their claims against Shearson to arbitration before the National Association of Securities Dealers, pursuant to their customer agreements with Shearson.

Plaintiff Anabelle Martin's claims against Shearson arise from alleged misrepresentations and omissions of fact made in October of 1988 by Robyn O'Leary, then an investment broker employed by Shearson. Plaintiff Martin contacted Ms. O'Leary, in October of 1988 to inquire about investing $100,000.00. The money represented the proceeds of insurance and employee death benefits Ms. Martin had received upon the death of her husband in August of that year. Ms. Martin understood that Ms. O'Leary was speaking to her from Shearson's St. Louis office. Ms. Martin decided to invest the money in AMCCP stock after speaking with Ms. O'Leary.

Although Ms. Martin's purchase of the AMCCP stock was through Ms. O'Leary at Shearson, Ms. O'Leary directed Ms. Martin to send the checks for the stock purchase to Timothy O'Leary at B.C. Christopher's St. Louis office. Ms. O'Leary's explanation was that she would soon be changing her place of employment to B.C. Christopher, and that Timothy O'Leary was her fiance and a broker with B.C. Christopher.

Ms. Martin purchased 6,060 shares of AMCCP stock for $100,000.00 on two consecutive days in October of 1988. The checks were made to the order of B.C. Christopher.

After receiving confirmation from B.C. Christopher of her stock purchases, Ms. Martin received a letter from Shearson's Chairman and Chief Executive Officer, Peter A. Cohen, welcoming her as a client at Shearson. The letter included Ms. Martin's account number. Shearson states that Ms. Martin never completed a "new account form," and never signed a client agreement with Shearson.

Ms. Martin received her first periodic account statement from B.C. Christopher for the period ending November 25, 1988.

The statement did not reflect "market value" in her B.C. Christopher account, but included an entry of 6,060 shares of AMCCP stock.

Ms. O'Leary continued her employment at Shearson until December 13, 1988. Later that month Ms. Martin received a second letter from Shearson advising that Ms. O'Leary had left their employment, and offering to assign Ms. Martin to a new Shearson broker. Ms. Martin elected not to be assigned a Shearson broker, but remained a client of Ms. O'Leary.

Ms. Martin in early January received her second periodic statement from B.C. Christopher for the period ending December 31, 1988. The second statement reflected a "market value" in Ms. Martin's B.C. Christopher account.

Ms. Martin asserts that prior to her contact with Ms. O'Leary, she had had only one stock experience. That experience was her lawyer's transfer of ownership of thirty-seven shares of Southwestern Bell from her deceased husband's name to her own name. Ms. Martin then sold the shares through her bank.

AMCCP's major subsidiary was Lincoln Savings and Loan Association of Irvine, California. On April 13, 1989 AMCCP filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code, and Lincoln was seized by federal banking authorities the next day. No dividend has been paid on AMCCP stock since March, 1989. Ms. Martin asserts that the stock is now of little or no value.

Ms. Martin alleges that Ms. O'Leary's wrongful acts induced Ms. Martin to purchase shares of American Continental Corporation Preferred Stock ("AMCCP"). Ms. Martin asserts the following claims against Shearson: (1) violation of § 10(b) of the Securities Exchange Act of 1934 and Rule 10(b)(5); (2) violation of § 12(2) of the Securities Exchange Act of 1933; (3) violation of § 20(a) of the Securities Exchange Act of 1934; (4) fraud and deceit under the common law of Missouri; (5) negligent misrepresentation under Missouri common law; (6) negligence under Missouri common

law; (7) breach of fiduciary duty under Missouri common law; and (8) violation of § 409.411(a) of the Missouri Securities Act, Mo.Rev.Stat. § 409.411(a) (1989).

## II. ANALYSIS

### A. *Standard for Summary Judgment*

Summary judgment can be granted only if there is no genuine dispute as to material fact and if the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The moving party has the burden of showing that there is no genuine dispute as to material fact. *Celotex Corporation v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the non-moving party must set forth evidence of specific facts showing the existence of a genuine issue for trial. *Id.; Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

In deciding the summary judgment motion, this Court must view the material facts, and the inferences properly drawn therefrom, in the light most favorable to the non-moving party. *Anderson* at 255–56, 106 S.Ct. at 2513. Only the facts that may affect the outcome of the case under the governing law and are necessary elements of the claim are "material." *Id.* Moreover, a factual dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

### B. *Shearson's Duty to Protect*

Ms. Martin's purchase of AMCCP stock was through B.C. Christopher, not Shearson. Therefore, the basis for Ms. Martin's claims against Shearson is that Shearson is liable for the alleged wrongful acts of their employee, Ms. O'Leary, in regard to Ms. O'Leary's recommendation of AMCCP stock to Ms. Martin.

Shearson contends that the firm is not liable because the firm owes no duty to protect Ms. Martin from Ms. O'Leary's conduct in regards to the recommendation of purchase of AMCCP stock. Shearson argues that no duty exists because: (1) Ms.

Martin did not conduct the transaction of AMCCP stock through Shearson, but instead purchased the stock through B.C. Christopher; and (2) Ms. O'Leary was not within Shearson's control or acting as a representative of Shearson at the time she allegedly induced Ms. Martin to purchase the AMCCP stock. Ms. Martin responds that she considered herself a client of Shearson's, and that she relied on Ms. O'Leary and on Shearson in the purchase of the AMCCP stock.

#### 1. Shearson's Relationship with Ms. Martin

This Court will first review Shearson's contention that the firm had no duty to protect Ms. Martin because the transaction did not occur through Shearson. Shearson cites a number of cases for the proposition that a brokerage firm has no duty to protect an investor from harm if the investor does not maintain an account or trade securities through that firm. This Court will briefly review some of this case law.

The first case cited by Shearson, *Sennott v. Rodman & Renshaw,* involves a fact situation similar to the case at bar. 474 F.2d 32 (7th Cir.), *cert. denied,* 414 U.S. 926, 94 S.Ct. 224, 38 L.Ed.2d 160, (1973). In *Sennott,* the plaintiff investor brought an action against a brokerage firm under Section 20(a) of the Securities Exchange Act of 1934, seeking to recover for damages sustained due to the fraudulent acts of a former employee-broker of the firm. *Id.* One of the bases of liability asserted against the brokerage firm was that one of the partners of the firm, who was also the father of the former employee, knowingly assisted and participated in the fraud. The plaintiff contended that the firm knew or should have known of the illegal conduct. *Id.* at 37.

The *Sennott* court held that the firm's duty to control its partners, agents, and past employees extended "only to transactions with or by these parties where [the firm] itself was involved." *Id.* at 40. The court concluded that there was no liability on the part of the firm. *Id. Accord Gordon v. Burr,* 506 F.2d 1080 (2d Cir.1974);

*Harrison v. Dean Witter Reynolds, Inc.,* 715 F.Supp. 1425 (N.D.Ill.1989); *Jackson v. Bache & Co.,* 381 F.Supp. 71 (N.D.Cal. 1974).

Shearson asserts that the *Sennott* holding is applicable to the case at bar because Ms. Martin's purchases were made through B.C. Christopher, and that Shearson did not participate in that transaction. Although Shearson's employee, Ms. O'Leary, allegedly solicited the sales to Ms. Martin, the sales occurred through no action on the part of Shearson. Shearson concludes that under controlling case law, the firm owes no duty to Ms. Martin.

Shearson asserts another reason that it had no duty to Ms. Martin regarding stock purchases made, not through Shearson, but through a competing brokerage firm. Shearson reasons that it has no duty because the firm had no contractual relationship with Ms. Martin. Even though Ms. Martin's purchases were made on the recommendation of a Shearson broker who was using Shearson's telephone, Ms. Martin did not sign a client contract with Shearson, nor did she supply the information required by Shearson's "new client" application. Shearson contends that the telephone activity by a Shearson employee is insufficient to confer liability on Shearson for purchases made through another brokerage without the existence of a contractual relationship. Shearson supports its contention by quoting an Illinois federal district court which held that a securities brokerage firm was not liable for the sales made by its broker to an individual who was not a client of the firm:

> An employer also has a duty to prevent employee wrongdoing when the employer has a contractual relationship with the customer which facilitates the employee's wrong. *See generally* Restatement (Second) of Agency § 213.... [The firm and the client], however, had no relationship. To be sure, [the client] may have believed that he was [the firm's] customer, but [the firm's] duty to control the activities of its employees vis-a-vis its customers extends only so far as its contract with those customers.

*Harrison v. Dean Witter Reynolds, Inc.,* 715 F.Supp. 1425, 1436 (N.D.Ill.1989).

■ Ms. Martin, through counsel, responds that Shearson is liable because the firm failed to monitor the acts of their employee, Ms. O'Leary. Ms. Martin argues at some length that Shearson knew or should have known that Ms. O'Leary's stock dealings needed to be monitored by Shearson's management because the unstable and speculative nature of AMCCP stock was known to the firm. Regardless of the merit of such argument, the fact is that the stock transaction occurred through B.C. Christopher, and not through Shearson. Any duty which Shearson had to monitor Ms. O'Leary could not extend to her activity in the sale of stock through B.C. Christopher. *Accord Harrison,* 715 F.Supp. at 1436.

Ms. Martin further contends, through counsel, that summary judgment is inappropriate because material facts remain in dispute regarding whether Ms. Martin maintained any form of relationship with Shearson or other Shearson employees. The dispute of these facts is not material and does not affect the granting of summary judgment in the case at bar. The issue in the case at bar is not whether any kind of relationship whatsoever existed, but instead is whether the relationship conferred liability on Shearson for the acts of its employee, Ms. O'Leary. Summary judgment cannot be denied on this ground.

2. Shearson's Responsibility for the Acts of its Employee, Robyn O'Leary

■ This Court will next review Shearson's contention that the firm is not liable to Ms. Martin because Ms. O'Leary was not within Shearson's control or acting as a representative of Shearson at the time she allegedly induced Ms. Martin to purchase the AMCCP stock. Shearson cites *Lake v. Kidder Peabody & Co.,* for the proposition that a brokerage firm has no duty to prevent harm caused by an employee when its employee was not within the scope or course of his authority or within the control of the firm at the time the alleged harm occurred. Fed.Sec.L.Rep. (CCH)

para. 96,509, at 93,976–7, 1978 WL 1101 (N.D.Ind.1978).

The fact situation in *Lake* is analogous to the case at bar. In *Lake,* a plaintiff had invested, together with his broker and other individuals, in a private partnership. The plaintiff's investment was made pursuant to the advice of his broker. After suffering losses, the plaintiff attempted to hold his broker's employer, Kidder, Peabody & Co., vicariously liable as a controlling person under Section 15 of the Securities Exchange Act of 1933 and Section 20(a) of the Securities Exchange Act of 1934.

The court held that the brokerage firm could not be held liable for its brokers' actions since no "control person" relationship existed between the firm and its broker with respect to the transactions that caused the plaintiff's losses. *Id.* at 93,976–7. The court emphasized the fact the broker's alleged misrepresentations were independent of the firm and that the plaintiff was aware that the broker actions were independent of the firm at the time of the misrepresentations. The Court stated:

> The ... inquiry ... is whether plaintiff actually believed he was dealing *with and through* Kidder Peabody in the person of [the broker] in connection with his [transaction] and whether, in light of all the circumstances ... such a belief was *reasonable.*

*Id.* at 93,976.

Similar to the facts in *Lake,* Ms. O'Leary was not under the control of Shearson in her dealings with Ms. Martin. Although Ms. O'Leary was an employee of Shearson at the time she sold the AMCCP stock to Ms. Martin, Ms. O'Leary never requested that Ms. Martin sign a client agreement with Shearson. Further, Ms. O'Leary told Ms. Martin that she would soon be working for B.C. Christopher, and instructed Ms. Martin to purchase the stock through B.C. Christopher.

Shearson did not authorize these activities of Ms. O'Leary, and Ms. O'Leary was not acting in her capacity as a Shearson broker when she solicited sales for B.C. Christopher. Like the plaintiff in *Lake,* Ms. Martin was aware that her purchases

were made through B.C. Christopher. Ms. Martin made her checks out to B.C. Christopher. She received account statements from B.C. Christopher. She knew that her stock purchases were made through Timothy O'Leary at B.C. Christopher.

Ms. Martin could not have reasonably believed that her purchases of AMCCP stock were through Shearson. Further, Ms. Martin could not reasonably have believed that Ms. O'Leary was acting in her capacity as a Shearson broker when Ms. O'Leary sold stock to her through B.C. Christopher. *Accord Harrison,* 715 F.Supp. at 1431 (broker not acting under apparent authority of brokerage firm unless "from the point of view of the third person the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business confided to him.") (citations omitted).

Ms. Martin contends, through counsel, that the letter from Shearson's chief executive officer welcoming her as a Shearson client is evidence of her reasonable reliance on Ms. O'Leary as Shearson's employee. Shearson correctly points out that the letter from Shearson was received by Ms. Martin after her purchase of AMCCP stock. Therefore, the letter is not relevant to her reliance on Shearson in the purchase of the AMCCP stock.

Ms. Martin also attempts to distinguish the case law cited by Shearson for the proposition that the firm is not liable for the acts of its employee outside of the scope of employment. Ms. Martin states that, unlike the plaintiffs in cases cited by Shearson, she is an inexperienced and naive investor, and as such she could not be expected to know that she was not dealing with Shearson when she purchased the AMCCP stock from Ms. O'Leary. However, even an unsophisticated investor could not have thought that she was purchasing stock through the Shearson brokerage firm, after having made out a check for the purchase of stock in the name of B.C. Christopher and receiving account statements from B.C. Christopher.

Another court held that a brokerage firm was not responsible for the sales made by

its brokers in a fact situation similar to the case at bar. In *Harrison v. Dean Witter Reynolds, Inc.*, a federal district court held that the fraudulent sales of nonexistent bonds by brokers working for the Dean Witter brokerage firm were not within the control of the firm. 715 F.Supp. 1425, 1437 (N.D.Ill.1989). The court reasoned that the firm did not know of the sales, and could not have known of the sales, since the deal was structured so that the purchase money was not sent to the office. *Id.* The court stated that "[w]here the employee's wrongdoing involves acts unrelated to his employment, his employer cannot be held liable on the grounds alone that it could have fired him had it known of the wrongdoing." *Id.* (citations omitted).

In the case at bar, Ms. Martin sent the money for the AMCCP stock purchase to B.C. Christopher. The money was not sent to Shearson. In a fact pattern like that in *Harrison*, Ms. O'Leary structured the deal with Ms. Martin so that Shearson could not have been aware of the transaction.

Ms. Martin states that she thought that she was dealing with Shearson as well as with B.C. Christopher. However, Ms. Martin's asserts no specific facts to substantiate her contention. Ms. Martin's bare statement that she thought that she was dealing with Shearson is not enough to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Shearson is not liable as a control person for the acts of Ms. O'Leary in regards to Ms. Martin.

### C. Credibility Issue

Ms. Martin asserts, through counsel, that Shearson's failure to produce in discovery the form letter welcoming Ms. Martin as Shearson's client creates a credibility issue requiring denial of the summary judgment motion. Ms. Martin correctly states that "if the credibility of the movant's witnesses is challenged ... and specific bases for possible impeachment are shown, summary judgment should be denied and the case allowed to proceed to trial, inasmuch as this situation presents the type of dispute over a genuine issue of material fact that should be left to the trier of fact." 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2726, at 115–16 (2d ed. 1983).

Shearson's failure to keep on file a form letter sent to a prospective client who did not sign a client contract, did not provide the information required in a new account application, never purchased stock through the firm, and who transferred her account to a competitive firm before dealing directly with the firm, does not appear to be an unusual business practice. No issues of credibility sufficient to preclude summary judgment arise.

### III. CONCLUSION

No genuine issues of material fact remain in dispute in the case at bar. Ms. Martin did not trade stock through defendant firm Shearson, nor did she sign a client contract with the firm. Ms. O'Leary, then a broker for the defendant firm Shearson, was not within the control of Shearson, and did not act as a Shearson representative when she allegedly induced Ms. Martin to purchase AMCCP stock. Defendant Shearson is entitled to summary judgment as a matter of law.

Accordingly, it is hereby

ORDERED that the motion of defendant Shearson Lehman Hutton, Inc. for summary judgment as to plaintiff Anabelle L. Martin, is granted with respect to Counts IX through XVI of plaintiffs' complaint.