WILLIAM JAIRETT, Thomas Sinibaldi, Barry Beakler, Betty Beakler, Richard Bieda, Peter Hoet, Kenneth Sinibaldi, Plaintiffs,

v.

FIRST MONTAUK SECURITIES CORP., Monument Financial Services Groups, Inc., United Bank of Philadelphia, Hatfield Bailey & Werth, Inc., Hatfield Financial Group, Inc., Hatfield Capital Management, Inc., Ronald V. Hatfield, Eric Keck a/k/a Eric Kack, Hubert Burkat, Derek Bailey, and Mr. Werh, Defendants.

No. CIV.A. 00–1889.

United States District Court, E.D. Pennsylvania.

March 14, 2001.

Order Denying Reconsideration May 14, 2001.

**564**

Frank R. Emmerich, Jr., Conrad, O'Brien, Gellman & Rohn, Philadelphia, PA, for plaintiffs.

Denis C. Dice, Philadelphia, Pa, Peter B. Andrews, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, PA, for First Montauk Securities Corp. defendant.

Hatty R. Blackburn, Derek B. Eddy, Albert N. Peterlin, Harry R. Blackburn & Associates, Philadelphia, PA, for Monument Financial Services Group, Inc., Hatfieald Financial Group, Inc., Hatfield Capital Management, Inc., Ronald V. Hatfield, defendants.

Robert J. Sugarman, Sugarman & Associates, Philadelphia, PA, for United Bank of Philadelphia, defendant

Joel W. Todd, Dolchin, Slotkin & Todd, P.C., Philadephia, PA, Albert N. Peterlin, Harry R. Blackburn & Assoc., Philadelphia, PA, for Hatfield Bailey & Werth, Inc., defendant.

Hubert Burkat, Philadelphia, PA, pro se.

Joel W. Todd, Dolchin, Slotkin & Todd, P.C., Philadephia, PA, for Derek Bailey, defendant.

Anthony P. Tabasso, Klehr, Harrison, Harvey, Branzburg & Ellers, LLP, Philadelphia, PA, for respondent.

## MEMORANDUM

LOWELL A. REED, JR., Senior District Judge.

Plaintiffs brought this law suit after losing money in an allegedly fraudulent investment scheme.[1] Defendant United Bank of Philadelphia ("United Bank") filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Document No. 12). Defendant First Montauk Securities Corporation ("First Montauk") filed a motion to dismiss or for summary judgment to dismiss claims brought by non-customer plaintiffs pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56 and a motion to compel arbitration and for stay of judicial proceedings pursuant to Title 9 of the United States Code § 4 (Document No. 14). Upon consideration of the motion of defendant United Bank, and the response and reply thereto, defendant's motion will be denied. Upon consideration of the motion of defendant First Montauk, and the response and reply thereto, defendant's motion will be denied in part and granted in part.

## I. Background[2]

Plaintiffs are a group of investors, most of whom had made certain investments through defendant Ronald V. Hatfield ("Hatfield") through his association with defendant Hatfield Bailey & Werth, Inc., defendant Hatfield Financial Group, Inc., defendant Hatfield Capital Management, and defendant First Montauk before in-

---

1. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under federal law, specifically, federal securities law. This Court has supplemental jurisdiction over the remaining state claims pursuant to 28 U.S.C. § 1367.

2. The following facts are gleaned from the complaint and taken as true and in the light most favorable to plaintiffs, as the non-moving party.

vesting in the fraudulent investment scheme which resulted in this law suit. Plaintiffs were looking for an opportunity to invest for their retirement and in the fall of 1998 it was represented to them that defendant Hatfield had entered into an exclusive relationship with First Montauk for the sale of securities. Hatfield also represented to plaintiffs that he was a partner in a licensed consumer discount company called Monument Financial Services Group, Inc. ("Monument Financial" or "Monument"), also a defendant in this case. Plaintiffs invested with Monument Financial because they were told the entity purchased collateralized mortgage rollover and offered a full array or mortgage services, including servicing, financing and refinancing of mortgages, automobile financing and leasing, and business equipment leasing. Plaintiffs were told that securities in Monument were offered through First Montauk. It was further represented that the securities would yield at least a 7 % return every 60 days with a 42% annual percentage rate.

Each plaintiff invested either $50,000 or $100,000 with Monument Financial and received a security equal to the amount of their respective investment. The total amount invested was $450,000. Each plaintiff received certificates from Monument Financial indicating a mortgage collateral in the amount of their investment. Each plaintiff also entered into a security agreement with Monument Financial. The plaintiffs were told that the securities were

to be processed by Monument Financial's banking institute, United Bank. Two of the security agreements entered into with Monument Financial listed United Bank as the depository bank. After tendering the investment checks, plaintiffs received canceled checks indicating that their money was deposited in United Bank.

The Monument Financial account at United Bank was opened on January 11, 1999. The Bank was directed to disburse funds only upon the dual authorization of Hatfield and defendant Eric Kack ("Kack").[3] Contrary to those instructions, five checks with only the signature[4] of Kack, totaling approximately $132,000, were honored by the bank in February, 1999. Plaintiffs believe that additional disbursements were made without proper authorizations. United Bank eventually froze the account.

Plaintiffs aver that funds were diverted to non-investment entities without their knowledge, that their money was not invested in collateralized mortgage rollover, and that their security interests were not perfected.[5] Plaintiffs bring six claims against United Bank for negligence (Count III), constructive fraud (Count X), breach of fiduciary duty (Count XV), breach of contract (Count XX), and two claims arising under the Pennsylvania Commercial Code (Counts XXVI & XXVII). Plaintiffs also bring six claims against First Montauk for negligence (Count I), breach of

---

**3.** Eric Kack is an alias for Eric Keck.

**4.** The complaint alleges that Kack "endorsed" these five checks. (Compl. at ¶¶ 56–60.) Because "endorsement" may be a legal term of art, this Court will instead use the generic term "signature" for these purposes.

**5.** On October 18, 1999, Monument Financial and Hatfield filed a civil action in the Pennsylvania Court of Common Pleas against United Bank which included claims for breach of

contract, conversion and civil conspiracy. Hatfield told plaintiffs that the suit was brought on their behalf. The complaint alleged that $550,000 was placed in United Bank representing the eight investors' initial investment in Monument Financial and that over $400,000 was disbursed from the account without proper authorization. Hatfield and Monument voluntarily dismissed the action without prejudice.

fiduciary duty (Count XIV), two claims arising under federal securities law (Counts XXI & XXII), and two claims arising under Pennsylvania securities law (Counts XXIII & XXV).

## II Analysis

### 1. Standard for Motion to Dismiss

Rule 12(b) of the Federal Rules of Civil Procedure provides that "the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted." In deciding a motion to dismiss under Rule 12(b)(6), a court must take all well pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *See Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). Because the Federal Rules of Civil Procedure require only notice pleading, the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a). A motion to dismiss should be granted if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). In considering a motion to dismiss, the proper inquiry is not whether a plaintiff will ultimately prevail, but rather whether a plaintiff is permitted to offer evidence to support its claims. *See Children's Seashore House v. Waldman*, 197 F.3d 654, 658 (3d Cir.1999), *cert. denied*, 530 U.S. 1275, 120 S.Ct. 2742, 147 L.Ed.2d 1006 (2000) (quoting *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996)). The court may consider the allegations in the complaint, as well as any exhibits attached thereto. *See Pension Benefit Guar. Corp.*

*v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993), *cert. denied*, 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994). The defendant bears the burden of showing that plaintiffs have failed to state a claim for which relief can be granted. *See Gould Elec. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir.2000).

Although defendant First Montauk calls its filing a motion to dismiss or in the alternative, for summary judgment, I will address it only as a motion to dismiss. The language of First Montauk's brief is overwhelmingly that of a 12(b)(6) motion, and plaintiff has responded as if it were solely a motion to dismiss. *See Vorhees v. Time Warner Cable Nat'l. Div.*, 109 F.Supp.2d 384, 386 (E.D.Pa.2000). Furthermore, neither party has provided this Court with evidence from which the court might determine the presence or absence of a genuine issue of material fact, as it must on a motion for summary judgment.[6] *See id.*

### 2. United Banks' Motion to Dismiss

Plaintiffs bring six counts against United Bank arising out of the Bank's allegedly improper disbursements. United Bank moves to dismiss the action on the grounds that plaintiffs are creditors of Monument Financial and had no dealings with United Bank, the depository bank of Monument. From this argument, United Bank asserts that the Bank owed plaintiffs no fiduciary duty, no tort duty, no contract duty, and no duty giving rise to a constructive fraud claims or claims arising under Pennsylvania's Commercial Code because the Bank only owed a duty to Monument. Plaintiffs respond that a duty was created because the account was a "custodial account" rath-

---

**6.** First Montauk attaches some exhibits to its filing. This Court, however, is not relying on those exhibits in making its determination.

Rather, I will address the merits of the arguments presented.

er than a "general account." In the alternative, plaintiffs assert that they are third party beneficiaries; a relationship was thus formed between plaintiffs and United Bank which gives rise to the claims brought. United Bank counters that the complaint fails to allege adequate facts to support those contentions.

■ Pennsylvania law recognizes two distinct bank accounts: custodial accounts, also known as special accounts, and general accounts. *See United States v. Carlow*, 323 F.Supp. 1310, 1315 (W.D.Pa.1971) (citing *R.M. Bourne & Co. v. Peoples Union Bank and Trust Co.*, 404 Pa. 519, 172 A.2d 814 (1961); *Franklin Savings & Trust Co. v. Clark*, 283 Pa. 212, 129 A. 56 (1925)). Where a special account exists, the bank is generally serving as a bailee or a trustee. *See Royal Bank of Pennsylvania. v. Selig*, 434 Pa.Super. 537, 546, 644 A.2d 741, 745 (1994), *appeal denied*, 540 Pa. 584, 655 A.2d 516 (1995). Where such an account exists, a " 'bank cannot *knowingly* accept a deposit for a particular purpose and then act to defeat the purpose for which that deposit was made.' " *Id.* (quoting *American Sec. Bank v. Kaneshiro*, 67 Haw. 354, 688 P.2d 254, 255 (1984)) (emphasis added). For example, a bank holding fiduciary funds is liable for honoring checks contrary to the instructions of an account. *See, e.g., Manfredi v. Dauphin Deposit Bank*, 697 A.2d 1025, 1029–30 (Pa.Super.1997), *appeal denied*, 553 Pa. 690, 717 A.2d 1028. However, the bank must be aware that the account contains money belonging to a third party. *See Ryan Bros. Inc. v. Curwensville State Bank*, 382 Pa. 248, 249, 114 A.2d 178, 179 (1955); *Franklin Savings*, 283 Pa. at 219, 129 A. 56. Whether an account is special or general depends on the circumstances of each case. *See Franklin Savings*, 283 Pa. at 218, 129 A. 56.

■ The question for this Court is whether the complaint in this case includes sufficient facts to demonstrate not only that a fiduciary relationship exists between plaintiffs and Monument Financial, but that the bank knew of that relationship. As to the first showing, "[f]iduciary or confidential relationships arise when one party places confidence in another with resulting superiority and influence on the other." *Temp–Way Corp. v. Continental Bank*, 139 B.R. 299, 317–18 (E.D.Pa.1992), *aff'd by*, 981 F.2d 1248 (citing *Yohe v. Yohe*, 466 Pa. 405; 412, 353 A.2d 417, 421 (1976) and *Maritrans G.P. Inc. v. Pepper, Hamilton & Scheetz*, 529 Pa. 241, 260, 602 A.2d 1277, 1286 (1992)). Brokers are one example of a fiduciary. *See Gouger v. Bear Stearns & Co., Inc.*, 823 F.Supp. 282, 286 (E.D.Pa.1993) (citing See *Merrill Lynch, Pierce, Fenner & Smith v. Perelle*, 356 Pa.Super. 165, 514 A.2d 552, 560 (1986)) (securities broker); *In re Barker*, 251 B.R. 250 (Bkrtcy.E.D.Pa.2000) (mortgage broker). A broker is defined generally as " 'one whose business it is to bring buyer and seller [or borrower and lender] together.' " *City of Phila. Tax Review Bd. v. Toben*, 32 Pa.Cmwlth. 523, 530, 379 A.2d 1361, 1365 (1977) (quoting *Williams and Co. v. School Dist. of Pittsburgh*, 430 Pa. 509, 511, 244 A.2d 37, 38 (1968), *appeal dismissed by*, 393 U.S. 319, 89 S.Ct. 554, 21 L.Ed.2d 514 (1969)) (citing *Keys v. Johnson*, 68 Pa. 42, 1871 WL 10912, at *3 (Pa.1871)). *Blacks Law Dictionary* provides broader definitions:

> Broker. An agent employed to make bargains and contracts for compensation. A dealer in securities issued by others.... A middle man or negotiator between parties.... A person whose business it is to bring buyer and seller together.

.　　.　　.　　.　　.

Broker-dealer. A securities brokerage firm, usually registered with the S.E.C. and with the state in which it does business, engaging in the business of buying and selling securities to or for customers.

. . . . .

Securities broker. Brokers employed to buy and sell for their principals stocks, bonds, government securities, etc. *Any person engaged in the business of effecting transactions in securities for the account of others, but does not include a bank* [citing Securities Exchange Act of 1934, § 3] . . . . *A person engaged . . . in the business of buying and selling securities, who in the transaction concerned, acts for or buys a security from or sells a security to a customer* [citing U.C.C. § 8–303.]

. . . . .

Mortgage broker. Person or firm who functions as intermediary between borrower and lender in securing loan, or *places loans with investors.*

*Black's Law Dictionary* 193, 1011 (6th ed.1990).

It can be inferred from the facts alleged in the complaint that Monument Financial acted as a broker, despite the fact that the complaint is somewhat inconsistent with respect to this point. At times, plaintiffs aver that securities were offered *in* Monument Financial, (Compl. at ¶¶ 29, 36), suggesting that plaintiffs were investing directly in Monument itself, an argument United Bank vigorously supports. At other times, however, plaintiffs allege that they invested money *with* Monument Financial (Compl. at ¶¶ 38–39), suggesting that Monument was acting as broker. In addition, plaintiffs aver that the securities purchased were actually offered through First Montauk. (Compl. at ¶ 36; Compl.

at Ex. C.) Plaintiffs also aver that Hatfield represented to plaintiffs that Monument Financial purchased collateralized mortgage rollover and offered a "full array" of mortgage services. (Compl. at ¶¶ 29, 36, 37; Compl. at Ex. B, C, D.) Finally, the complaint characterizes the account as holding fiduciary funds and that United Bank knew of its status and its purpose. (Compl. at ¶¶ 205, 209.) It seems to this Court that plaintiffs are not entirely sure what form their investment took and what role Monument played or are pleading in the alternative to some extent. Nonetheless, this Court must view the alleged facts in the complaint as a whole and in the light most favorable to the plaintiffs. In light of this standard, I find that plaintiffs have alleged a set of facts showing that Monument was acting as a broker and that the Bank was aware of fiduciary nature of the funds in the account.

I find it necessary, however, to address the two arguments which plaintiffs present to this Court in support of their assertion that United Bank actually had knowledge of the fiduciary relationship because I find neither one the least bit persuasive. Plaintiffs first argue that the bank was or should have been on notice that the funds in the account belonged to plaintiffs because the entity is titled "Monument *Financial Services* Group, Inc." and somehow the words "financial services" should alert the Bank that the account contained special funds. (Pls.' Reply at 19.) I find that argument wholly unworthy. Plaintiffs do not contend, for example, that Monument opened two bank accounts and titled one, "Monument Financial Services Group, Inc, Broker." *See Sherts v. Fulton Nat. Bank of Lancaster*, 342 Pa. 337, 339–40, 21 A.2d 18, 19–20 (1941) (finding bank had notice of fiduciary funds because one account name used the word "attorney"); *but cf. Franklin Savings*, 283 Pa. at 218, 129 A. 56 (placing word "special" on ac-

count does not in itself create special account). Second, plaintiffs contend that the "Business New Account Worksheet" imputes knowledge onto the bank. (Pls.' Reply at 19; Compl. at Ex. H.) Having combed this application form myself, I find no such indication. The plaintiffs names are nowhere to be found, and Monument Financial merely characterizes itself as a corporation involved in the service industry. While I find these two arguments completely lacking persuasiveness, it is possible through discovery or otherwise that plaintiffs can prove the allegations of the complaint. Thus, this case does not present a situation where *no* set of facts could be proved to support the claims.

■ Plaintiffs also contend that their claims survive because they were third party beneficiaries of the account. In order to succeed on the third party beneficiary theory, plaintiffs would need to show that United Bank intended for plaintiffs to benefit from the bank account agreement. *See, e.g., Drummond v. University of Pa.,* 651 A.2d 572, 578 (Pa.Cmwlth.1994), *appeal denied by,* 541 Pa. 628, 661 A.2d 875 (1995). Plaintiffs plead that there was such an intention. (Compl. at ¶ 178). This allegation satisfies the plaintiffs' burden at this stage of the proceedings.

■ The next task for this Court is to identify which claims can be sustained upon a showing that United Bank was aware that it held fiduciary funds or that plaintiffs were third party beneficiaries. I conclude that United Bank has failed to meet its burden in showing that any claims should be dismissed. Defendant contends that the negligence claim cannot be sustained because the Bank owed a duty only to Monument. The above analysis demon-

strates that the complaint pleads facts that create a duty running from the Bank to plaintiffs. *See Gerace v. Holmes Prot. of Phila.,* 357 Pa.Super. 467, 473–74, 516 A.2d 354, 358 (1986), *appeal denied by,* 515 Pa. 580, 527 A.2d 541 (1987) (noting that fundamental tort rule is that defendant must owe duty of care). Defendant contends that plaintiffs have no constructive fraud claim because the Bank owed no duty to plaintiffs. However, the complaint alleges sufficient facts showing that the Bank owed such a duty. *See Noyes v. Cooper,* 396 Pa.Super. 592, 604, 579 A.2d 407, 413 (1990), *appeal denied by,* 527 Pa. 667, 593 A.2d 842 (explaining elements of claim of constructive fraud which "usually arises from a breach of duty when a relationship of trust and confidence exists") (citation omitted). As to arguing that the claim for breach of fiduciary duty should be dismissed, United Bank contends that because plaintiffs did not hold an account with the Bank, no such duty existed. However, as explained above, if the Bank knew that account held fiduciary funds, then the bank was acting as bailee or trustee. *See Royal Bank,* 434 Pa. Super. at 546, 644 A.2d 741. The claim for breach of implied and express contract was outlined above and plaintiffs sustain this claim on the third-party beneficiary theory. *See Drummond,* 651 A.2d at 578.

■ The claims brought under the Pennsylvania Commercial Code, 13 Pa. C.S.A. § § 3300–3400 *et. seq.*, survive for similar reasons. United Bank contends that claims brought under sections 3403 [7] and 3420, covering conversion, cannot be sustained because plaintiffs are creditors of Monument. However, as outlined

---

**7.** The complaint states a claim for section 3402; however, that provision covers when a represented person is bound by a signature. Provision 3403 covers unauthorized signa-

tures. Thus, it seems that plaintiffs meant to state a claim under section 3403, not section 3402.

above, plaintiffs have adequately plead that they were not simply creditors. Whether or not they were creditors cannot be disposed of by this motion to dismiss. Likewise, United Bank's contention that claims brought under sections 3306 and 3307, covering fiduciaries, must be dismissed because the account did not contain fiduciary funds and plaintiffs are investors must fail. Again, whether or not the account held fiduciary funds is not a matter which can be disposed of at this stage in the litigation.

■ Finally, United Bank moves this Court to dismiss the claims for punitive damages, arguing that plaintiffs never alleged that the Bank's conduct was malicious, wanton, reckless, willful, or oppressive. *See Feld v. Merriam,* 506 Pa. 383, 395, 485 A.2d 742, 747–48 (1984) (noting standard for punitive damages). In order to sustain a claim for punitive damages, the conduct alleged must be "outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Id.* (citing *Chambers v. Montgomery,* 411 Pa. 339, 344, 192 A.2d 355, 358 (1963)). Plaintiffs allege, *inter alia,* that "United Bank was aware that the manner in which disbursements were being effectuated was contrary to the manner described when the account was established," (Compl. at ¶ 209), and that "United Bank was aware that disbursements for substantial sums of money were being diverted to Kack's personal use." (Compl. at ¶ 207.) Viewed in the light most favorable to plaintiffs, the Bank knowingly honored Kack's sole signature on disbursements, i.e., on purpose and aware that fiduciary funds were going to Kack's personal use. Plaintiffs have thus pleaded the necessary conduct and may be able to sustain punitive damages. While plaintiffs could certainly have been more clear with respect to artic-

ulating their prayer for punitive damages, they alleged sufficient facts to put United Bank on notice that they were seeking punitive damages. Whether United Bank *actually* acted with such intent cannot be determined by this motion for dismiss.

Thus, I conclude that United Bank has failed to meet its burden in proving that the complaint fails to state a claim for six causes of action brought against United Bank. In addition, the prayer for an award of punitive damages stands.

### 3. First Montauk's Motion to Dismiss Non–Customer claims

First Montauk argues that because plaintiffs Barry and Betty Beakler, Richard Bieda, and Kenneth Sinibaldi (collectively referred to as "non-customer plaintiffs") were never direct customers of First Montauk, their claims should be dismissed. Apparently, William Jairett, Thomas Sinibaldi, and Peter Hoet (collectively referred to as "customer plaintiffs") maintained a public customer account at First Montauk. (Def.'s Mem. at 2.) Plaintiffs essentially respond that First Montauk's liability does not turn on whether plaintiffs had active accounts with defendant. Rather, First Montauk, as a broker-dealer, is liable to all plaintiffs for its failure to monitor and supervise Hatfield, who was a registered agent of First Montauk and who represented to plaintiffs that securities in Monument Financial were reviewed, recommended, monitored and purchased through First Montauk.

Liability for secondary liability under section 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), is imposed where the defendant had control over the violator of the securities laws and the defendant failed to show he acted in good

faith.[8] *Sharp v. Coopers & Lybrand,* 649 F.2d 175, 185 (3d Cir.1981), *cert. denied,* 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982), *overruling on other grounds recognized by, McCarter v. Mitcham,* 883 F.2d 196, 201–02 (3d Cir.1989) (citing *Rochez Bros., Inc. v. Rhoades,* 527 F.2d 880, 885 (3d Cir.1975) ("*Rochez II*")). Culpable participation is generally an element of a claim brought under section 20(a). *See id.* An exception to the "culpable participation" requirement has been recognized in cases of respondeat superior where the relationship involves a broker-dealer because in that case "a stringent duty to supervise employees does exist." *Rochez II,* 527 F.2d at 885; *see also Carroll v. John Hancock Distrib., Inc.,* Civ. A. No. 92–5907, 1994 WL 87160, at *6 (E.D.Pa. Mar.14, 1994). In such cases, a failure to exercise this supervisory duty amounts to a violation under the doctrine of respondeat superior. *See Carroll,* 1994 WL 87160, at *6.

In order to state a claim under section 10(b) of the Exchange Act, the general fraud provision, plaintiffs must aver the following: "(1) that [defendant] made a materially false or misleading statement or omitted to state a material fact necessary to make a statement not misleading; (2) that [defendant] acted with scienter; and (3) that [plaintiffs'] reliance on [defendants'] misstatement caused them injury."[9] *In re Aetna Inc. Sec. Litig.,* 34 F.Supp.2d 935, 943 (E.D.Pa.1999) (citing *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1417 (3d Cir.1997)). The

---

**8.** Specifically, the statute reads:

> (a) Joint and several liability; good faith defense
> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.
> 15 U.S.C. § 78t (a).
> The term "control" is further defined under the implementing regulations as meaning "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person." 17 C.F.R. § 230.405.

**9.** Specifically, the statute reads:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
> (a) To effect a short sale, or to use or employ any stop-loss order in connection with the purchase or sale, of any security registered on a national securities exchange, in contravention of such rules and regulations

as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
> 15 U.S.C. § 78j.
> Rule 10(b)–5 states:
> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.
> 17 C.F.R. § 240.10b–5.

broker-dealer exception explained above applies in 10(b) cases as well. *See Sharp*, 649 F.2d at 180–81; *see also Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1577 n. 27 (9th Cir.1990) (en banc), *cert. denied*, 499 U.S. 976, 111 S.Ct. 1621, 113 L.Ed.2d 719 (1991) (recognizing rule in Third Circuit and following *Sharp* and five other circuits on this point); *Riggs v. Schappell*, 939 F.Supp. 321, 329 (D.N.J.1996) (determining that broker-dealer exception does not apply to clearing brokers). While secondary liability is available through the broker-dealer exception under section 10(b), private litigants may no longer bring forth a claim under section 10(b) based on aiding and abetting. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191, 114 S.Ct. 1439, 1455, 128 L.Ed.2d 119 (1994). The dissent in *Central Bank* noted that the majority decision "casts serious doubt . . . on other forms of secondary liability that,

like the aiding and abetting theory, have long been recognized by the SEC and the courts." *Id.* at 200, 114 S.Ct. 1439 (Stevens, J. dissenting). As the Court of Appeals for the Third Circuit has not overruled its decision in *Sharp*, this Court will decline to do so, particularly where defendant has not made such a request.

■■■■■ It is clear from the above review of the law that a broker-dealer may be held liable for failing to strictly supervise the acts of a registered agent, in this case Hatfield, (Compl. at ¶ 24),[10] under both sections 20(a) and 10(b) of the Exchange Act, as long as liability is not based on the theory of aiding and abetting.[11] It is simple to apply these rules where a plaintiff has had direct dealings with the broker-dealer. *See, e.g., Sharp*, 649 F.2d at 183 (determining exception applies to accounting firm that knew that two of its opinion letters, which turned out to be

**10.** Defendant does not dispute that Hatfield was a registered representative. (Def.'s Mem. at 2.)

**11.** Defendant argues that in *Sharp*, the Court of Appeals determined that where secondary liability is asserted under section 20(a) on the basis of inaction, plaintiffs must allege that the inaction " 'was deliberate and done intentionally to further the fraud.' " *Sharp*, 649 F.2d at 185 (quoting *Rochez II*, 527 F.2d at 889). Defendant seems to confuse controlling person liability with respondeat superior liability which are two *separate* types of secondary liability. *See* Louis Loss, et. al., *Fundamentals of Securities Regulation* 1233–41 (4th ed.2001).

In *Rochez II*, the Court of Appeals carved out an exception to the general rule that section 20(a) does not provide for recovery on the theory of respondeat superior. *See Sharp*, 649 F.2d at 181 (interpreting *Rochez II* ). Specifically, in cases where a broker-dealer relationship is involved, there exists a heightened duty of supervision. *See id.* at 181–82 (explaining why heightened duty exists and providing citations to other circuits holding that view). Thus, in that context, plaintiffs

can proceed on a claim via respondeat superior.

In *Sharp*, the Court of Appeals applied the broker-dealer respondeat superior exception to section 10(b). *See id.* When discussing section 20(a), however, the court was not expounding on a claim brought via respondeat superior. Rather, the court was outlining a claim brought under section 20(a) controlling person theory. *See id.* at 185. In that case, as noted by the court, the "culpable participant" requirement exists, but may be proved through inaction. *See id.* This is different from a case of respondeat superior where liability is based on a failure to stringently supervise broker-dealers. *See id.* at 185.

Defendant also quotes heavily from *Landy v. Federal Deposit Ins. Corp.*, 486 F.2d 139, 166 (3d Cir.1973), *cert. denied*, 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974), characterizing the case as holding that non-customers may not hold brokers liable under 10(b). I note that the quote was taken out of context by First Montauk and that the Court of Appeals was actually discussing New York Stock Exchange Rule 405. Further, the court discussed 10(b) only in the context of standing. *See Landy*, 486 F.2d at 159.

wrong, were intended to be used as a tool by securities sellers); *Leavey v. Blinder, Robinson & Co., Inc.,* Civ. A. No. 85–7018, 1986 WL 10556, at *4 (E.D.Pa. Sept.19, 1986). This case, however, presents a somewhat more complex factual scenario. Before examining those details, I note that this Court is somewhat puzzled by First Montauk's argument because it seems to confuse the facts. When analyzing the necessary premise behind First Montauk's essential argument, it appears that defendant is under the impression that the money allegedly defrauded from plaintiffs was first placed in the respective accounts held at First Montauk. The complaint, however, does not aver those facts. The complaint asserts that many plaintiffs had made prior investments through their association with Hatfield through his association with First Montauk. (Compl. at ¶ 22.) The complaint also seems to make clear that the now lost money was given to Hatfield in the name of Monument Financial. (Compl. at ¶¶ 38–39.) First Montauk is named as a defendant not because Hatfield (and other defendants) allegedly mishandled their First Montauk accounts, but because (1) Hatfield, a registered agent of First Montauk, induced plaintiffs to invest by his association with First Montauk, by telling them that their investments were offered through First Montauk and that First Montauk would review, investigate and monitor those securities; and (2) First Montauk failed to oversee

and supervise its registered agent. (Compl. at ¶¶ 30, 36, 50, 72–76, 83–89.) In other words, the claims in the complaint are not alleged to have any relation to the accounts held by plaintiffs at First Montauk; thus, for the purposes of this lawsuit there is no relevant distinction between customer and non-customer plaintiffs.[12]

Given the fairly convoluted facts present in this case, this Court must determine whether absent any direct dealings with First Montauk, plaintiffs' claims can proceed. Defendant points this Court to *Morgan v. Staats,* Civ A. Nos. 84–2765, 85–2461, 85–2462, 85–2463, 1988 WL 22995 (W.D.Pa. Jan.22, 1988), where the court granted a motion for summary judgment filed by a broker-dealer regarding a section 20(a) claim.[13] In *Morgan,* an advisor to a registered broker-dealer of securities had induced the plaintiff to make a certain investment based upon fraudulent statements and omissions. *See id.,* 1988 WL 22995, at *1. In discussing the respondeat superior claims, the court noted that "[c]ustomer status may not be needed" and determined that liability may be imposed where an agent commits fraud within the scope of its employment. *See id.,* 1988 WL 22995, at *5 (citing *Aiello v. Ed. Saxe Real Estate, Inc.,* 508 Pa. 553, 559, 499 A.2d 282, 285 (1985)). In determining that scope, the court noted that a showing of justifiable reliance was required. *See id.,* 1988 WL 22995, at *6 (citing *Cover v. Cushing Capital Corp.,* 344 Pa.Super. 593,

---

**12.** In fact, this Court did not learn of the purported direct First Montauk accounts of these so-called customer plaintiffs by the complaint, but by Defendant's brief.

**13.** The remaining cases on which Defendant primarily relies do not come from courts within this Circuit. As this Court found an adequate amount of law within this Circuit, I will not elaborate on the rest of the cases except to note that I found many cases distinguishable both factually and procedurally and

not persuasive. In addition, two have essentially been overruled. *See Buhler v. Audio Leasing Corp.,* 807 F.2d 833 (9th Cir.1987), *called into doubt by, Hollinger v. Titan Capital Corp.,* 914 F.2d 1564 (9th Cir.1990), *cert. denied,* 499 U.S. 976, 111 S.Ct. 1621, 113 L.Ed.2d 719 (1991); *Sweasey v. Edwards,* 738 F.Supp. 1278 (E.D.Mo.1990), *rev'd by, Martin v. Shearson Lehman Hutton, Inc.,* 986 F.2d 242 (8th Cir.1993) (en banc), *cert. denied,* 510 U.S. 861, 114 S.Ct. 177, 126 L.Ed.2d 136.

497 A.2d 249 (1985)). The court noted that a key inquiry in *Sharp* focused on whether the public representations at issue had been "designed to influence potential investors." *See id.*, 1988 WL 22995, at *5. The court concluded in the case before it that no evidence existed showing that the securities were connected to defendant or its "reputation and prestige" and granted the defendant its motion. *See id.*, 1988 WL 22995, at *6. This case is distinguishable in that plaintiffs have alleged that they relied on First Montauk's involvement in making their investment. In addition, the different procedural posture on *Morgan* is significant. There, the court addressed the merits of a summary judgment motion. Here, the question is not whether there is sufficient evidence to proceed, but rather whether plaintiffs may be permitted to offer evidence found during discovery. Here, facts are gleaned from the complaint, and it is unknown as yet what knowledge First Montauk had with respect to Hatfield's use of its name to lure plaintiffs into making investments.

This Court finds *Carroll v. John Hancock Distrib., Inc.*, Civ. A. No. 92–5907, 1994 WL 87160, at *1 (E.D.Pa. Mar.14, 1994), more instructive. In that case, two defendants, who were employed by the owner of a general agency who was registered with the National Association of Security Dealers as a representative of the general agency, induced plaintiffs to invest their moneys in unregistered securities. Plaintiffs further alleged that the employees attempted to create the impression that the general agency "offered, reviewed and sponsored" the sale of the investment instruments which later proved fraudulent. *Id.*, 1994 WL 87160, at *1. Relying on *Sharp,* the court allowed the section 20(a) claim against the general agency to go forward on the theory that the agency failed to properly supervise its employees. *See id.*, 1994 WL 87160, at *6. This case is factually very similar to the one at bar. Plaintiffs here also allege that they invested based, at least in part, on First Montauk's involvement. (Compl. at ¶¶ 30, 36, 50.)

I find that plaintiffs have adequately plead that First Montauk could be found liable under sections 10(b) and 20(a) of the Exchange Act under the theory of respondeat superior. Plaintiffs may not, however, proceed on their theory that First Montauk is liable under section 10(b) because it aided and abetted in the fraud. In brief, the complaint alleges that First Montauk had a duty to supervise and monitor its registered agent, Hatfield, who in turn violated securities laws. (Compl. at ¶¶ 72–76, 185–88, 190–92.)[14] Whether First Montauk *actually* failed to stringently supervise Hatfield is a factual question which cannot be resolved on a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

Similarly, First Montauk fails to meet its burden in showing that plaintiffs claims for negligence and breach of fiduciary duty should be dismissed. Defendant argues that it has no duty to non-customer plaintiffs. As explained above in detail, First Montauk owed a duty to supervise its agent. *See Sharp,* 649 F.2d at 185; *Gerace v. Holmes Prot. of Phila.,* 357 Pa.Su-

---

**14.** It is noted that this Court does not find plaintiffs' complaint exemplary in that it never uses the term respondeat superior. Specifically, plaintiffs allege that First Montauk had a duty to supervise its agent, (Compl.¶¶ 72–76); however, plaintiffs discuss the breach of this duty in reference to their claim for negligence and not in their claim for violations arising under federal securities laws. (Compl.¶¶ 85, 89.) This technical problem, however, does not bar plaintiffs from proceeding, particularly because plaintiffs note that First Montauk's duties arise from, *inter alia,* federal securities laws. (Compl.¶ 86.)

per. 467, 473–74, 516 A.2d 354, 358 (1986) (noting that fundamental tort rule is that defendant must owe duty of care). Thus, the claim for negligence withstands this motion. As to the claim for breach of fiduciary duty, parties agree that a broker-dealer owes a fiduciary duty. The question here is whether such a duty remains where plaintiffs have no direct relationship with First Montauk. As explained with respect to the United Bank motion, a fiduciary relationship generally arises where "one party places confidence in other with resulting superiority and influence on the other." *Temp–Way Corp. v. Continental Bank*, 139 B.R. 299, 317–18 (E.D.Pa.1992). Plaintiffs here have alleged such a relationship. (Compl. at ¶ 147.) In addition, a breach of fiduciary duty can lie via respondeat superior. *See Carroll*, 1994 WL 87160, at *4. Whether such a relationship actually exists is a question which cannot be disposed of on a motion to dismiss.

 Thus, I conclude that First Montauk's motion will be denied as far as it moves this Court to dismiss claims brought by non-customer plaintiffs under sections 10(b) and 20(a) of the Exchange Act through the theory of respondeat superior and for state law claims of negligence and breach of fiduciary duty. I further conclude that First Montauk's motion will be granted as far as it moves this Court to dismiss the claim brought under section 20(a) for aiding and abetting.

### 3. First Montauk's Motion to Compel Arbitration

 First Montauk also moves this Court to compel the claims brought by customer plaintiffs to arbitration because those plaintiffs purportedly signed arbitration agreements with First Montauk. In support of its motion, First Montauk attaches the purported agreements. I note first that I find the attachments prema-

ture. Plaintiffs have clearly viewed this motion as a motion to dismiss and not one for summary judgment. *See supra*, II A. Thus, I hesitate to consider evidence submitted outside the pleadings. Nonetheless, even if I were to consider such evidence at this stage in the proceedings, the so-called agreements purporting to bind customer plaintiffs to arbitration are plainly inapplicable here because the agreements are not between customer plaintiffs and First Montauk; rather, the agreements are between the customer plaintiffs and Schroder & Co, Inc. ("Schroders"). (Def.'s Exs. C–F). Schroders is not a party to this lawsuit. First Montauk alleges without any supporting evidence that Schroders serves as the clearing firm for First Montauk. (Def.'s Mem. at 16.) Defendant has not directed this Court to any portion in the agreements which explain the relationship between First Montauk and Schroders, nor has this Court found any such statement within the agreements. First Montauk emphasizes the following portion of the agreement:

> The undersigned agrees and by carrying an account for the undersigned you agree, that all controversies which may arise between *us* concerning any transaction or the construction, performance, or breach of this or any other agreement between *us* pertaining to securities and other property, whether entered into prior, on or subsequent to the date hereof shall be determined by arbitration.... The undersigned broker has authorized you to enter into this agreement with the undersigned on its behalf and the terms and conditions hereof, including the pre-arbitration provision shall be applicable to all matters between the undersigned's, [sic] the undersigned broker and you.

(Def.'s Mem. at 16) (emphasis added.) This highlighted provision does not indi-

cate that First Montauk is a party to the agreements. In fact, the agreements, by use of the word "us," seem to indicate that only the customer plaintiffs and Schroders are bound by any terms therein. In addition, even if First Montauk were a party to the agreements, as explained in detail above, the claims here were not brought as a result of any direct accounts plaintiffs held with First Montauk. Rather, the claims arise out of First Montauk's alleged failure to supervise its registered agent who used its employment relationship with First Montauk to encourage plaintiffs to make investments with him through Monument. Thus, I conclude that the arbitra-tion agreements attached by First Montauk cannot serve to compel arbitration.

### 4. First Montauk's Motion to Dismiss Pennsylvania Securities Law Claims

 Plaintiffs bring two counts against First Montauk under the Pennsylvania Securities Act. *See* 70 P.S. § 1–101 *et seq.* and First Montauk moves to dismiss these claims as brought by both customers and non-customers. Count 23 relies on sections 401, 403, 404, and 501. The Court of Appeals for the Third Circuit has clearly held that the "sole source" of civil liability under sections 401,[15] 403,[16] and 404[17] is

---

15. Section 401 provides:

It is unlawful for any person, in connection with the offer, sale or purchase of any security in this State, directly or indirectly:
(a) To employ any device, scheme or arti-fice to defraud;
(b) To make any untrue statement of a ma-terial fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances un-der which they are made, not misleading; or
(c) To engage in any act, practice or course of business which operates or would oper-ate as a fraud or deceit upon any person.

16. Section 403 provides:

No broker-dealer or agent shall effect any transaction in, or induce or attempt to in-duce the purchase or sale of, any security in this State by means of any manipulative, deceptive or other fraudulent scheme, de-vice, or contrivance, fictitious quotation, or in violation of this act or any regulation or order hereunder.

17. Section 404 provides:

(a) It is unlawful for any person who re-ceives, directly or indirectly, any consider-ation from another person for advising the other person as to the value of securities or their purchase or sale, whether through the issuance of analyses or reports or other-wise, in this State:
(1) To employ any device, scheme, or arti-fice to defraud the other person.

(2) To engage in any transaction, act, prac-tice, or course of business which operates as a fraud or deceit upon any other person.
(3) Acting as principal for his own account, knowingly to sell any security to or pur-chase any security from a client, or, acting as broker for a person other than such client, knowingly to effect any sale or pur-chase of any security for the account of such client, without disclosing to such client in writing before the completion of the transaction the capacity in which he is acting and obtaining the consent of the client to such transaction. The prohibitions of this paragraph shall not apply to any transaction with a *customer* of a broker-dealer if such broker-dealer is not acting as an investment adviser in relation to such transaction.
(4) To engage in any act, practice, or course of business which is fraudulent, de-ceptive, or manipulative.

. . . .

(6) To represent that he is an investment counsel or to use the name "investment counsel" as descriptive of his business un-less a substantial part of his business con-sists of rendering investment advisory ser-vices on the basis of the individual needs of his clients.
(7) Unless the person is registered as a bro-ker-dealer under this act, to take and have custody of any securities or funds of any client if he fails to meet such requirements therefor as may be prescribed by the com-mission by regulation.

section 501.[18] *See Biggans v. Bache Halsey Stuart Shields, Inc.*, 638 F.2d 605 (3d Cir.1980), *overruled on other grounds by, In re Data Access Sys. Sec. Litig.*, 843 F.2d 1537 (3d Cir.1988) (en banc), *cert. denied*, 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103. The Court of Appeals also determined that such a claim only allows for a private cause of action against a buyer or a seller, not a broker. *See id.; see also Sharp*, 649 F.2d at 192.; *Zawid v. Elkins & Co.*, 33 Pa. D. & C 3d 185 (Pa.Com.Pl.1982), 1982 WL 1299, at *1. Plaintiffs argue that such privity between buyer and seller is not required as ruled by *Klein v. Boyd*, 949 F.Supp. 280, 282 (E.D.Pa.1996).[19] The court in *Klein*, however, did not hold that privity is not required. Rather, the court determined that any *technical* lack of privity due to the fact that the seller did not actually own the securities he sold, did not excuse liability. *See id.* Thus, plaintiffs reliance on *Klein* is misplaced. I conclude that plaintiffs may not bring forward a claim under section 501 against First Montauk because defendant is a broker-dealer of securities and not a seller of securities.

██ The law surrounding plaintiffs claim under section 501 as it relates to

section 503 is less straight forward. Section 503 provides:

1–503 Joint and several liability; contribution; corporation's right of indemnification

(a) Every affiliate of a person liable under section 501 or 502 … every partner, principal executive officer or director of such person, every person occupying a similar status or performing similar functions, every employe [sic] of such person who materially aids in the act or transaction constituting the violation, and *every broker-dealer or agent who materially aids in the act or transaction constituting the violation*, are also liable jointly and severally with and to the same extent as such person, unless the person liable hereunder proves that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

70 P.S. § 503 (emphasis added).

In *Penturelli v. Spector Cohen Gadon & Rosen*, 640 F.Supp. 868, 871 (E.D.Pa.1986), the court determined that a private cause of action to a buyer against an aider and abettor could not lie under section 503. The court noted that:

---

18. Section 501 provides in relevant part:

(a) Any person who … offers or sells a security in violation of sections 401, 403, 404 or otherwise by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading … shall be liable to the person purchasing the security from him … .

(b) Any person who purchases a security in violation of sections 401, 403, 404 or otherwise by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circum-

stances under which they are made, not misleading, shall be liable to the person selling the security to him … .

19. In a rare circumstance, a panel on the Court of Appeals for the Third Circuit reversed the District Court; however, the Court of Appeals then granted a rehearing en banc which vacated the panel decision. *See Klein v. Boyd*, Nos. 97–1143, 97–1261, 1998 WL 55245 (3d Cir. Feb.12, 1998); *see also* Rule 9.5.9. *Internal Operating Procedures,* United States Court of Appeals for the Third Circuit, Jan. 2000. Before the en banc Court reached a decision, the case apparently settled and no opinion was issued. Thus, technically, the district court opinion stands as good law.

[I]n *Biggans,* Judge Sloviter noted that the sole source of civil liability for any acts in violation of section 401 is found in section 501. At the time *Biggans* was decided, section 503 was in effect and it would arguably have governed a case against a broker. In Sharp v. Coopers & Lybrand, the court again held that the Pennsylvania Securities Act grants a private remedy to a buyer only against his seller. Similarly, in *Zawid v. Elkins & Co.,* the court held that the Pennsylvania Securities Act does not afford a private cause of action against a broker who is trading on accounts of others and thus is neither a buyer or seller subject to civil suit under the Act.

*See id.* (citations omitted). The court also rejected the argument that the Pennsylvania Superior Court decision in *Brennan v. Reed, Smith, Shaw & McClay,* 304 Pa. Super. 399, 450 A.2d 740 (1982), dictated a different answer. In *Brennan,* the Superior Court held a law firm, which obviously did not sell securities, liable under section 503. *See id.* at 412, 450 A.2d 740. Many courts have followed the lead of the court in *Penturelli* and denied claimants a cause of action against a broker under section 503. *See, e.g., In re Phar-Mor, Inc. Sec. Litig.,* 892 F.Supp. 676, 688 (W.D.Pa.1995); *Schor v. Hope,* Civ. A. No. 91–0443, 1992 WL 22189, at *4 (E.D.Pa. Feb.4, 1992).

This Court, however, disagrees with the determination that section 503 disallows a private suit by an investor against a broker and is not alone. *See, e.g., St. Julien v. Andrews,* No. Civ. A. 97–2236, 1998 WL 134223, at *4 (E.D.Pa. Mar.24, 1998);[20] *Carroll,* 1994 WL 87160, at 4; *Bull v. American Bank and Trust Co. of Pa.,* 641 F.Supp. 62, 66–67 (E.D.Pa.1986); *In re*

*Catanella and E.F. Hutton and Co., Inc. Sec. Litig.,* 583 F.Supp. 1388, 1440 n. 76 (E.D.Pa.1984); *Feninger v. Capital Accumulations Serv., Inc.,* 439 Pa.Super. 366, 371, 654 A.2d 560, 562 (1994). The plain language of section 503 seems to contemplate such an action and at least one Pennsylvania court has allowed such a claim. In addition, the Court of Appeals for the Third Circuit has acknowledged that *Brennan* calls into question the holdings of both *Sharp* and *Biggans* as far as those decisions held that the Pennsylvania Securities Act only provides for a cause of action against buyers and sellers. *See McCarter v. Mitcham,* 883 F.2d 196, 204 (3d Cir. 1989). The Court of Appeals also noted that providing such a cause of action under section 503 is not at odds with prior third circuit law since those decisions never discussed section 503. *See id.* Thus, I conclude that plaintiffs claim under section 503 may proceed.

## IV. Conclusion

In sum, defendant United Bank has failed to meet its burden in demonstrating that the six claims and the request for punitive damages brought by plaintiffs should be dismissed. Defendant First Montauk has failed to meet its burden that all claims brought by non-customers should be dismissed except that I conclude that plaintiffs' claim under the Exchange Act for aiding and abetting will be dismissed. I conclude that the motion to compel the customer claims to arbitration will be denied because the First Montauk is not a party to the purported arbitration agreements and the customer accounts at First Montauk are not the source of liabili-

---

**20.** It should be noted that the court in *St. Julien* relied on the opinion of the panel for the Court of Appeals for the Third Circuit which initially reversed the district court in *Klein.* As explained, supra, this panel opin-

ion was later vacated by a grant of a rehearing en banc. *See Klein v. Boyd,* Nos. 97–1143, 97–1261, 1998 WL 55245 (3d Cir. Feb.12, 1998). Thus, the panel decision is technically not good law.

ty in this lawsuit. I further conclude that plaintiffs' claim under sections 401, 403, 404 and 501 of the Pennsylvania will be dismissed, but plaintiffs' claim under sections 501 and 503 will not be dismissed.

An appropriate order follows.

## ORDER

AND NOW this 14th day of March, 2001, upon consideration of the motion by Defendant United Bank of Philadelphia ("United Bank") to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Document No. 12), and the response and replies thereto, the motion by Defendant First Montauk Securities Corporation ("First Montauk") to dismiss or for summary judgment to dismiss claims brought by non-customer plaintiffs pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56 and a motion to compel arbitration and for stay of judicial proceedings pursuant to Title 9 of the United States Code § 4 (Document No. 14), and the response and reply thereto, and for the reasons set forth in the foregoing memorandum, it is hereby **ORDERED** that:

1. The motion of United Bank is denied;

2. The motion of First Montauk to dismiss claims by plaintiffs is granted as far as it moves this Court to dismiss any claim brought under the Securities Exchange Act for aiding and abetting and any claim brought under the Pennsylvania Securities Act under sections 401, 403, 404 and 501 (Count XXIII) and is denied in all other respects;

3. The motion of First Montauk to compel claims brought by customer plaintiffs to arbitration and for stay of judicial proceedings is denied.

**IT IS FURTHER ORDERED** that defendant United Bank and defendant First Montauk shall file an answer no later than **April 12, 2001.**

## MEMORANDUM ON RECONSIDERATION

Plaintiffs brought this law suit after losing money in an allegedly fraudulent investment scheme. They claim that defendant First Montauk Securities Corporation ("First Montauk") is liable under the sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j (b), 78t (a), the Pennsylvania Securities Act of 1972, 70 P.S. § 1–101 *et. seq.,* and state tort law. Defendant First Montauk brought a motion to compel arbitration which this Court denied. Defendant now files a motion to reconsider. (Document No. 55). For the following reasons, the motion will be denied.

Typically, a motion for reconsideration is decided under Federal Rule of Civil Procedure 59(e) or 60(b). *See Dayoub v. Penn–Del Directory Co.,* 90 F.Supp.2d 636, 637 (E.D.Pa.2000). However, neither Rule 59(e) nor 60(b) applies here because the order First Montauk seeks to have reconsidered is not a final judgment or order but rather an interlocutory decision. *See Johnson v. West Suburban Bank,* 225 F.3d 366, 370 (3d Cir.2000) (noting that a refusal to compel arbitration is an interlocutory order even though it is immediately appealable).

A federal district court has the inherent power to reconsider interlocutory orders "when it is 'consonant with justice'" to do so. *Walker by Walker v. Pearl S. Buck Foundation, Inc.,* No. 94–1503, 1996 WL 706714, at *6 (E.D.Pa. Dec. 3, 1996) (quoting *United States v. Jerry,* 487 F.2d 600, 605 (3d Cir.1973)). "'The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence.'" *Confer v. Custom Eng. Co. Employee Health Benefit*

*Plan,* 760 F.Supp. 75, 77 (W.D.Pa.) (quoting *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985), *aff'd in part on other grounds and dismissed in part on other grounds,* 952 F.2d 41 (3d Cir.1991)). Because of the interest in finality, however, courts should grant motions for reconsideration sparingly. *See Rottmund v. Continental Assurance Co.,* 813 F.Supp. 1104, 1107 (E.D.Pa.1992).[1]

The facts of this case are fully stated in this Court's prior decision which includes the adjudication of First Montauk's motion to compel arbitration, as well as motions to dismiss separately filed by First Montauk and defendant United Bank. *See Jairett v. First Montauk Sec. Corp.,* Civ. A. 00–1889; 2001 WL 267869, at *1, *7, *10 (E.D.Pa. Mar.14, 2001). I recount here only the barest of facts necessary to resolve the motion for reconsideration. Plaintiffs William Jairett, Thomas Sinibaldi, and Peter Hoet (collectively referred to as "customer plaintiffs") apparently maintained a customer account at First Montauk. Plaintiffs have *not* brought suit against First Montauk for any alleged misconduct regarding the accounts held by the customer plaintiffs.[2] First Montauk, however, contends that the claims brought by customer plaintiffs should be compelled to arbitration because those plaintiffs signed a Cash Account Agreement, which included an arbitration clause, with Schroder & Co., Inc. ("Schroders"), in which First

Montauk was an intended beneficiary. Schroders is not a party to this lawsuit, nor has any party attempted to join them as a party. Schroders serves as the clearing firm for First Montauk, which served as introducing broker.[3]

While the United States Supreme Court has declared that any ambiguities regarding the scope of arbitrable issues should be resolved in favor of arbitration, *see Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), the High Court has also made clear that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Tech., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (citation omitted). Under the Federal Arbitration Act, 9 U.S.C. § 4, the court must determine whether there is a "valid agreement to arbitrate" and whether the "specific dispute falls within the substantive scope of that agreement." *PaineWebber Inc. v. Hartmann,* 921 F.2d 507, 511 (3d Cir.1990) (citations omitted). If the court answers both determinations in the affirmative, than it must refer the case to arbitration without reaching the merits. *See id.* A motion to compel arbitration should be denied "unless it may be said with *positive assurance* that the arbitra-

---

1. Plaintiffs argue that the motion of defendant for reconsideration was filed one day too late pursuant to Local Rule 7.1(g) and should therefore be dismissed. Defendant contends that the motion was timely filed. In the interest of maintaining a full record, and as plaintiffs have failed to show prejudice even if the motion was untimely filed, this Court will reach the merits of the motion.

2. Rather, plaintiffs claim that First Montauk is liable for its alleged failure to monitor and supervise defendant Ronald V. Hatfield, who was a registered agent of First Montauk, and

who allegedly induced plaintiffs to invest in securities in defendant Monument Financial by claiming the securities were reviewed, recommended, monitored and purchased through First Montauk. *See id.,* 2001 WL 267869, at *7.

3. In industry practice, the clearing broker has no client contact and executes orders with the securities exchange as directed by the introducing broker which solicits orders and makes recommendations to their clients.

tion clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Tech.*, 475 U.S. at 650, 106 S.Ct. at 1419 (emphasis added) (citations omitted). Under this standard, the scope of an arbitration agreement is judicially determined, *see PaineWebber Inc. v. Hofmann*, 984 F.2d 1372, 1374 (3d Cir.1993), such that "a compelling case for nonarbitrability should not be trumped by a flicker of interpretive doubt." *Hartmann*, 921 F.2d at 513.

Generally, arbitration agreements are enforceable only by signatories. *See Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1296 (3d Cir.1996) (citing *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1516 (3d Cir.1994), *aff'd*, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). There are, however, exceptions to that general rule such as demonstrating third party beneficiary status. *See In re the Prudential Ins. Co. of Am. Sales Practice Litig.*, 133 F.3d 225, 229 (3d Cir.1998); *see also, Dayhoff*, 86 F.3d at 1296–97 (reconciling precedential case law to determine that non-signatories must be in obvious and close nexus with non-parties and contract or contracting parties in order to enforce contract).

First Montauk alleges that it is an intended beneficiary of the agreement between customer plaintiffs and Schroders. State law governs general questions of the enforceability of arbitration agreements. *See Stone v. Pennsylvania Merchant Group, Ltd.*, 949 F.Supp. 316, 321 (E.D.Pa. 1996) (citing *Perry v. Thomas*, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 2527 n. 9, 96 L.Ed.2d 426 (1987)). Under Pennsylvania law, a party is deemed an intended beneficiary under a few circumstances. First, if "both parties to the contract express an intention to benefit the third party in the contract itself;" second, if "the circumstances are so compelling that recognition

of the beneficiary's right is appropriate to effectuate the intention of the parties," and either the performance satisfies an obligation to pay money *or* the circumstances indicate that the promisee intends the benefit to be conferred upon the beneficiary the benefit of the promised performance. *See Scarpitti v. Weborg*, 530 Pa. 366, 372–73, 609 A.2d 147, 150–51 (1992). In sum, the intent of the parties to the contract is dispositive.

The agreement in question here provides:

THE UNDERSIGNED [customer plaintiffs] AGREES AND BY CARRYING AN ACCOUNT FOR THE UNDERSIGNED YOU [Schroders] AGREE, THAT ALL CONTROVERSIES WHICH MAY ARISE BETWEEN *US* CONCERNING ANY TRANSACTION OR THE CONSTRUCTION, PERFORMANCE, OR BREACH OF THIS OR ANY OTHER AGREEMENT BETWEEN *US* PERTAINING TO SECURITIES AND OTHER PROPERTY, WHETHER ENTERED INTO PRIOR, ON OR SUBSEQUENT TO THE DATE HEREOF SHALL BE DETERMINED BY ARBITRATION..... The undersigned's broker [Fist Montauk] has authorized you [Schroders] to enter into this agreement with the undersigned [customer plaintiffs] on its behalf and the terms and conditions hereof, including the pre-arbitration provision shall be applicable to all matters between the undersigned [customer plaintiffs], the undersigned's broker [First Montauk] *and* you [Schroders].

(Def.'s Exs. C, D and E) (emphasis added). Parties seem to agree that First Montauk, though not specifically named anywhere in the agreement, served as the referenced broker in the agreement. It is possible by this reference in the last sentence that

First Montauk is an intended beneficiary of the agreement for certain claims brought by customer agreements. However, for the following reasons, I conclude that the claims brought in this suit fall outside the scope of that intended benefits.

The first sentence, by use of the word *us*, clearly applies only to matters between Schroders and customer plaintiffs. *See Arrants v. Buck*, 130 F.3d 636, 638–39, 641 (4th Cir.1997) (determining that under agreement with identical phrase introducing broker lacks standing to enforce); *Antinoph v. Laverell Reynolds Sec., Inc.*, 703 F.Supp. 1185, 1191 (E.D.Pa.1989) (construing similar language as failing to benefit to introducing broker); *Adams v. Laidlaw, Adams & Peck, Inc.*, Civ. A. No. 87–0165, 1987 WL 13388, at *2 (E.D.Pa.1987), *aff'd*, 845 F.2d 1009 (3d Cir.1988) (same); *see also Taylor v. Investors Assoc., Inc.*, 29 F.3d 211, 213, 216 (5th Cir.1994) (determining that introducing broker and non-signatory to arbitration agreement was not an intended beneficiary); *O'Connor v. R.F. Lafferty & Co., Inc.*, 965 F.2d 893, 902 (3d Cir.1992) (same); *McPheeters v. McGinn, Smith and Co., Inc.*, 953 F.2d 771, 773–74 (2d Cir.1992) (same); *Mowbray v. Moseley, Hallgarten, Estabrook & Weeden, Inc.*, 795 F.2d 1111, 1117 (1st Cir.1986) (same); *but see, Nesslage v. York Sec., Inc.*, 823 F.2d 231, 233 (8th 1987); *Okcuoglu v. Hess, Grant & Co., Inc.*, 580 F.Supp. 749, 751–52 (E.D.Pa.1984).

First Montauk argues that the second sentence modifies the more expansive language of the first sentence thus contending that First Montauk is fully entitled to compel arbitration of *any* claims brought by customer plaintiffs against it. This Court disagrees. The last sentence merely requires that any claims involving *all three* entities must be compelled to arbitration. By use of the word "and," the agreement does not allow for First Montauk to compel arbitration where customer plaintiffs bring suit against only First Montauk and *not* Schroders. *See Everett v. Dickinson & Co., Inc.*, 929 P.2d 10, 13 (Colo.Ct.App. 1996) (construing identical language as compelling arbitration only where all three entities are involved). The agreement reads "all matters between the undersigned ·[customer plaintiffs], the undersigned's broker [Fist Montauk] *and* you [Schroders]." It does not read, e.g., "all matters between the undersigned [customer plaintiffs], the undersigned's broker [Fist Montauk] *and/or* you [Schroders]," or simply *"or* you," or delete Schroders from the sentence altogether. *See Macaulay v. Norlander*, 12 Cal.App.4th 1, 15 Cal.Rptr.2d 204, 207 (Cal.Ct.App.1993) (compelling arbitration where agreement read "shall be applicable to all matters between such broker [introducing broker] and you [customers]").

This Court's construction of the agreement is further bolstered by the fact that it does not appear that Schroders could conceivably be joined as an additional defendant since the misconduct allegedly stems from a failure to supervise a registered agent who took money from plaintiffs and placed it in an account held by defendant Monument Financial Service Group, Inc. In other words, Schroders has no connection to the allegedly mishandled money. There is simply no evidence that the parties to the agreement, namely, customer plaintiffs and Schroders, intended this agreement to extend to matters which did not involve, or even implicate, Schroders. Likewise, First Montauk does not share a nexus to both parties with respect to the claims brought against it here. *See, Dayhoff,* 86 F.3d at 1296–97 (reconciling precedential case law to determine that non-signatories must be in obvious and close nexus with non-parties and contract or contracting parties in order to enforce contract). Rather, First Montauk,

in the context of the facts of this case, is connected only to plaintiffs and not Schroders since plaintiffs are not suing over any alleged mishandling of their accounts with First Montauk.

Defendant primarily relies on three cases which are each distinguishable. First, in *Macaulay v. Norlander*, 12 Cal. App.4th 1, 15 Cal.Rptr.2d 204, 208 (Cal.Ct. App.1993), the court granted the motion by the defendant, who was the introducing broker and not a party to the arbitration agreement, to compel the law suit to arbitration. That arbitration agreement, however, as noted above, employed different language. Specifically, it read:

8. INTRODUCED ACCOUNTS.... [T]he introducing broker has authorized Tucker Anthony [clearing broker] 'to enter into this agreement with you [plaintiffs] on their [introducing broker's] behalf and the terms and conditions hereof, including the arbitration provision ..., shall be applicable to all matters between broker and you....' *Each reference to "we" or "us" in paragraph 9 shall be understood to include any such broker [referring to introducing broker].*

. . . . .

9. ARBITRATION.... You [plaintiffs] agree, and by carrying an account for you [plaintiffs] we [clearing broker] agree, that ... all controversies which may arise between you [plaintiffs] and us concerning any transaction or the construction, performance or breach of this or any other agreement between you [plaintiffs] and us ... shall be determined by arbitration.

*Id.* at 206 n. 1, 207 n. 2 (emphasis in the original). Thus in *Macaulay*, the agreement specified that the arbitration clause extended to matters between only the "broker and you [plaintiffs]," as opposed to matters encompassing all three parties.

In addition, the final sentence of paragraph 8 clearly indicates an intention that the "us" in the arbitration clause extend to the introducing broker. In contrast, the agreement presented here fails to signal that the arbitration agreement extends to litigation between only First Montauk and customer plaintiffs.

First Montauk also relies on *Okcuoglu v. Hess, Grant & Co., Inc.*, 580 F.Supp. 749, 751–52 (E.D.Pa.1984), which in essence adopted the following four step analysis, drawing largely on agency law: (1) because the transaction sued upon involved unauthorized or unexecuted trades, the clearing house could still be joined as a necessary party; (2) as long as that possibility remained, the clearing house had the right to compel the claims to arbitration; (3) the course of dealings between the parties indicates that the introducing broker acted as an agent for both the customer's and the clearing broker's agent; (4) thus the introducing broker was the clearing broker's agent and could thus enforce the right to arbitrate. *See id.* at 750–52; *see also, Mowbray,* 795 F.2d at 1116 (interpreting *Okcuoglu* under four step process). The agreement before this Court, however, clearly absolves Schroders from any liability for acts committed by First Montauk, which defeats any claims that First Montauk is an agent of Schroders. *See Lenhart v. Westfield Fin. Corp.,* 909 F.Supp. 744 (D.Haw.1995) (concluding that agency law cannot apply where agreement clearly absolves clearing broker of all liability for wrongful act(s) of introducing broker); *Antinoph,* 1989 WL 67332, at *5 (same); *Kyung Sup Ahn, M.C. v. Rooney, Pace Inc.,* 624 F.Supp. 368, 370 (S.D.N.Y.1985) (same). Specifically, the agreement here reads, "The undersigned [customer plaintiffs] understands and agrees that you [Schroders] shall have no responsibility or liability to the undersigned for any acts or

omissions of such other broker [First Montauk], its officers, employees or agents." (Def.'s Exs. C, D and E). Thus the reasoning in *Okcuoglu* cannot be applied here.

Finally, defendant relies on *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1114–15 (3d Cir.1993), in which the Court of Appeals determined that the clause "all controversies which may arise between [us]" is expansive and applies to all disputes. However, the clause presented for construction here is not the first part of the arbitration clause, but rather, the language: "The undersigned's broker [Fist Montauk] has authorized you [Schroders] to enter into this agreement with the undersigned [customer plaintiffs] on its behalf and the terms and conditions hereof, including the pre-arbitration provision shall be applicable to all matters between the undersigned [customer plaintiffs], the undersigned's broker [Fist Montauk] *and* you [Schroders]." As a result of this sentence, for the reasons explained above, First Montauk cannot benefit from the expansive language unless all three entities are involved in the dispute.

I conclude that defendant First Montauk is not entitled to compel the claims brought by customer plaintiffs to arbitration because even if First Montauk is an intended beneficiary in some sense under the agreement signed by customer plaintiffs and Schroders, the claims brought here clearly fall outside the scope of that relationship. Thus, it is not consonant with justice to grant First Montauk's motion for reconsideration.

An appropriate order follows.

### ORDER

**AND NOW**, this 14th day of May, 2001, upon consideration of the motion of defendant First Montauk Securities Corporation for reconsideration of the Court's denial to compel claims brought by customer plaintiffs to arbitration (Document No. 55), and the response of plaintiffs thereto, and for the reasons set forth in the foregoing memorandum, **IT IS HEREBY ORDERED** that the motion for reconsideration is **DENIED**.